J-A24026-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: B.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C., PRESUMPTIVE | : | |
| FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 526 WDA 2020 |

Appeal from the Decree Entered March 27, 2020
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s): 32-19-0473

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.: FILED FEBRUARY 12, 2021

J.C. ("Father") appeals from the decree terminating his parental rights to his minor child, B.C. ("Child"), born in 2012. Father's counsel has filed an Anders[1] brief and an application to withdraw as counsel, to which Father has not responded. We grant counsel's withdrawal request and affirm the decree terminating Father's parental rights to Child.

Father is Child's presumptive father. Indiana County Children and Youth Services ("CYS") began its involvement shortly after Child was born addicted to opiates. The court adjudicated Child dependent in April 2016, when Child was three years old. The court placed Child with paternal uncle and aunt, with

_____

[1] Anders v. California, 386 U.S. 738 (1967); see also In re V.E., 611 A.2d 1267, 1275 (Pa.Super. 1992) (holding Anders protections apply to appeals of involuntary termination of parental rights).

whom Child had already been living off and on, and later with Father in November 2016. The court terminated supervision in 2017.

Less than two years later, in January 2019, CYS removed Child from Father's home after learning Father had been arrested and incarcerated for operating a methamphetamine laboratory in his home and his car. Father was to become eligible for parole in July 2020. Child was six years old at the time. The court adjudicated Child dependent in February 2019 and ordered placement with paternal aunt and uncle.

Approximately seven months later, in October 2019, CYS filed a petition for involuntary termination of Father's parental rights. The court held a hearing in March 2020 at which Child, then seven years old, was represented by both counsel and guardian ad litem. The court heard testimony from Father and a CYS caseworker, as well as the expert testimony of a clinical psychologist.

Father testified that he had visits with Child during his incarceration between January and June 2019, but the visits stopped after he was moved from county jail to state prison. Father said he did not request visits with Child after moving to the state penitentiary because he "lost his paperwork," and admitted that he has only seen Child once since June 2019. Trial Court Opinion and Decree, 3/27/20, at 6. Father testified that he and Child had a good relationship in the past, but that he "definitely was not performing parental duties" for Child at the time of his arrest, and that their relationship is now "strained." Id. at 7. Father testified he received drug and alcohol counseling

and mental health counseling while in prison, and, at the time of the hearing, had enrolled in violence prevention and parenting classes.

The CYS caseworker testified that once Father is released on parole, he would have to be free of illegal drug use for at least six months before he could be considered a placement option for Child. Id. She also testified that Child, who has lived with his uncle and aunt for over two years, "is very comfortable with his uncle and aunt, and very comfortable in their home," and refers to his uncle and aunt as "Dad" and "Mom." Id. at 6-7.

A clinical psychologist, Dr. Carolyn Menta, testified that she had conducted a bonding assessment in November 2019. The resulting report was admitted into evidence. She observed that Child feels "happy" when he thinks about his aunt and uncle, and that he addresses Father by his first name. Id. at 15 (quoting Agency Exhibit 1, at 2-3). Dr. Menta found that Child was "parentified," meaning he feels responsibility for Father's well-being and is forced to take on the role of an adult in keeping his Father happy. Id. at 8 (quoting Agency Exhibit 1, at 3). She opined that "[t]hough Child was cooperative with his father, he did not appear comfortable. He did not appear to be happy or excited to see his father. His presentation was one of cooperation and compliance, but not enthusiasm." Id. (quoting Agency Exhibit 1, at 4). She found Child's bond with Father to be "minimal, at best," and that it was in Child's "best interest to have permanency and stability with his aunt and uncle." Id. at 8-9 (quoting Agency Exhibit 1, at 4).

Following the hearing, the court entered a decree involuntarily terminating Father's parental rights to Child.[2] The court found termination was warranted under 23 Pa.C.S.A. § 2511(a)(5) and (b).

Father appealed. Father's counsel filed an Anders brief and motion to withdraw. Father did not respond. CYS filed a letter stating it would not file an appellee's brief, and that the guardian ad litem and counsel for Child both joined CYS in asking us to affirm the trial court.

We initially denied counsel's motion to withdraw because Father's counsel had erroneously advised Father that he may only proceed pro se or with private counsel after we granted the withdrawal request. See Commonwealth v. Muzzy, 141 A.3d 509, 511-12 (Pa.Super. 2016).[3]

Father's counsel has since filed a new Anders brief and motion to withdraw that satisfy the Anders requirements. Counsel seeking to withdraw pursuant to Anders must file a brief in which counsel (1) summarizes the procedural history and facts of the case, with citations to the record; (2) refers to anything in the record that arguably supports the appeal; (3) sets forth counsel's conclusion that the appeal is frivolous; and (4) sets forth counsel's reasons for so concluding. Commonwealth v. Santiago, 978 A.2d 349, 361

_____

[2] Child's biological mother executed a Consent to Adoption, and the court terminated her parental rights to Child on March 16, 2020. That same day, the court involuntarily terminated the parental rights of Child's natural father.

[3] See also In re Adoption of L.B., 237 A.3d 427 (Pa.Super. 2020) (unpublished memorandum at *3) (applying Muzzy to appeal from termination of parental rights).

(Pa. 2009). Counsel's withdrawal request must also state that counsel has examined the record and determined the appeal is frivolous. Commonwealth v. Cartrette, 83 A.3d 1030, 1032 (Pa.Super. 2013) (en banc). Counsel must furnish a copy of the Anders brief to the appellant, and advise the appellant that he or she has the immediate right to retain other counsel or proceed pro se. Id.

Because the new filings meet these requirements, we will conduct our own review of the record to determine whether the appeal is wholly frivolous before passing on counsel's request to withdraw. Santiago, 978 A.2d at 355 n.5.

In the Anders brief, counsel identifies the following issues:

1. Did the Trial Court commit [an] abuse of discretion or error of law when it concluded that the Agency established grounds for termination pursuant to 23 Pa.C.S.A. [§] 2511(a)(5)?

2. Did the Trial Court commit [an] abuse of discretion or error of law when it concluded that the termination of parental rights was appropriate and in the child's best interest pursuant to 23 Pa.C.S.A. [§] 2511(b)?

3. Did the Trial Court commit [an] abuse of discretion or error of law when it concluded that the bond between Father and the minor child was minimal at best?

Anders Br. at 6-7.

When reviewing the involuntary termination of parental rights, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (quoting In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012)). We review

the trial court's decision for an error of law or abuse of discretion. In re Adoption of K.C., 199 A.3d 470, 473 (Pa.Super. 2018). We will not reverse without a "demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." In re Adoption of S.P., 47 A.3d at 826.

Counsel raises a potential challenge to the conclusions of the trial court in favor of termination under 23 Pa.C.S.A. §§ 2511(a) and (b). A petition to terminate parental rights entails a bifurcated analysis. See In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007). First, pursuant to Section 2511(a), the court must focus on the conduct of the parent and determine whether there is "clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." Id. Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." In re Adoption of K.C., 199 A.3d at 473.

Here, the court found termination was appropriate under Section 2511(a)(5). Subsection (a)(5) provides for termination when

> [t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

If the court determines that Section 2511(a) is met, it then must, under § 2511(b), shift its focus to the child, and determine "the needs and welfare of the child under the standard of best interests of the child." In re L.M., 923 A.2d at 511. Subsection (b) states, "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." In re L.M., 923 A.2d at 511. The court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." In re N.A.M., 33 A.3d 95, 103 (Pa.Super. 2011) (citation omitted). The court must also consider any bond between the child and pre-adoptive foster parents. In re T.S.M., 71 A.3d at 268.

In finding termination warranted under subsection (a)(5), the court first acknowledged that more than six months had elapsed since Child's removal in January 2019, as more than 13 months had elapsed by the time of the hearing. Trial Ct. Op. and Decree at 10.

The court also observed that the conditions leading to Child's removal continued to exist. The court noted that Father had operated a very dangerous methamphetamine lab in his home and car while Child was living with him,

was now absent from Child's life due to his incarceration, and would not be an immediate placement option upon his release. Id. at 10-11.

The court next found that Father could not remedy the conditions which led to Child's removal within a reasonable time. According to the court, "[i]n order for [Father] to remedy the situation that led to [Child]'s removal, he would need to be released from incarceration, successfully engage in services, and obtain and maintain stable employment and housing." Id. at 11. The court reviewed the dependency case since Child's birth, and found "there have been multiple investigations, one shelter care hearing, two adjudications, six permanency review hearings, and at least three separate placements with paternal uncle and aunt. [Father]'s persistent illegal drug use and criminal activity have spanned Child's lifetime." Id. at 12. The court noted that the CYS caseworker had testified that Father had not stayed in contact with CYS or informed CYS of his engagement with prison services. The court stated, "Father's testimony regarding his participation in services during his incarceration over the last 13 months is paltry at best. He did not possess any certificates of participation and/or completion." Id.

The court stressed that Father's incarceration alone did not serve as the basis for termination of his parental rights. It explained that its findings were "based on Father's actions from the time of [Child's] birth until removal in January of 2019, his current incarceration, and his almost complete failure to demonstrate his desire to be a father to [Child] during his period of incarceration." Id. at 13. The court found it "troubling and unexplainable" that

Father did not request visits with Child while serving his state sentence. Id. at 11. Father also failed to send Child "cards or letters during his period of incarceration. This total lack of effort by Father has resulted in one contact with [Child] in over nine months, and that contact was necessary for the [CYS]-directed Bonding Assessment." Id. at 11-12.

The court further found that termination would best serve Child's needs and welfare, the final inquiry under subsection (a)(5). The court relied on Dr. Menta's uncontradicted expert testimony, and her conclusion that it is in Child's "best interest to have permanency and stability with his aunt and uncle." Id. at 13 (quoting Agency Exhibit 1, at 4).

The court similarly relied on Dr. Menta's testimony in finding that termination would best serve the "developmental, physical, and emotional needs and welfare" of Child, under subsection (b). Id. at 15 (quoting 23 Pa.C.S.A. § 2511(b)). The court contrasted Dr. Menta's findings that Child has a minimal bond with Father and refers to him as "Jeremy," with Dr. Menta's observation that he is happy with his aunt and uncle, and the CYS caseworker's testimony that Child refers to them as "Mom" and "Dad." Id. at 15. The court also noted Child "has resided with his aunt and uncle for approximately two years of [his] young life." Id.

Counsel found the issues she identified in the Anders brief to be frivolous, and we concur. Our own review of the record reveals no other non-frivolous issues. We therefore grant counsel's petition to withdraw, and affirm the degree terminating Father's parental rights to Child.

Decree affirmed. Motion to withdrawal granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2021